# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

JEFF WADE BROOKS,           )
                            )
         Plaintiff,         )
                            )
                            ) Case No. CIV-18-316-KEW
                            )
COMMISSIONER OF THE SOCIAL  )
SECURITY ADMINISTRATION,    )
                            )
         Defendant.         )

## OPINION AND ORDER

Plaintiff Jeff Wade Brooks (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was 44 years old at the time of the decision. He has a high school education. He has no past relevant work. He alleges an inability to work beginning on October 29, 2013, due to limitations resulting from diabetes mellitus, with bilateral diabetic neuropathy of his hands and feet, kidney damage, decreased vision of the left eye from trauma, high blood pressure, post-traumatic stress disorder ("PTSD"), and antisocial personality traits.

**Procedural History**

On September 10, 2015, Claimant protectively filed an application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act.

3

Claimant's application was denied initially and upon reconsideration. On August 29, 2017, Administrative Law Judge("ALJ") John W. Belcher conducted an administrative hearing presiding from Tulsa, Oklahoma, at which Claimant was present. On November 1, 2017, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on July 17, 2018, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work, with certain limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) failing to perform a proper evaluation at step five of the sequential evaluation process; (2) failing to properly assess the medical source opinions; and (3) failing to properly assess the consistency of his complaints with the evidence.

### Step-Five Determination

In his decision, the ALJ found Claimant suffered from severe impairments of diabetes mellitus with neuropathy, MRSA (status-

4

post infection), reduced vision in his left eye, pleural effusion in the heart, obesity, and kidney disease (Tr. 32). He determined Claimant could perform sedentary work, with other limitations. Claimant could lift/carry no more than ten pounds occasionally and less than ten pounds frequently, push/pull limitations were consistent with lift/carry limitations, and he could stand/walk for four hours in an eight-hour workday. Claimant could sit for six to eight hours in an eight-hour workday. He could climb stairs occasionally, but he could not climb ladders, ropes, or scaffolds. Claimant could frequently finger, handle, and feel bilaterally and should avoid all exposure to hazardous or fast machinery, unprotected heights, and driving. Claimant had no stereo vision in the left eye due to vision loss. Because of mental impairments, Claimant should only have incidental contact with co-workers or supervisors and should have no contact with the public. He cannot perform high stress or rapid assembly line work. (Tr. 34).

After consultation with the VE, the ALJ determined Claimant could perform the representative jobs of document preparer, addresser, and touch up screener, which the ALJ found existed in significant numbers in the national economy. (Tr. 41). As a result, the ALJ concluded Claimant has not been under a disability since September 10, 2015, the date his application was filed. (Tr. 41).

Claimant contends the VE's testimony that Claimant can perform the job of document preparer is inconsistent with the

Dictionary of Occupational Titles ("DOT") based upon the reasoning level of the job and his RFC. He argues that the ALJ limited him to "no fast-paced work" which implies that Claimant can only perform simple not complex work, and he cannot therefore perform the job of document preparer which requires a reasoning level of three. Claimant further contends that even though the remaining jobs of addresser and touch up screener have a reasoning level of two, the jobs only represent a total of 38,000 jobs in the national economy, which does not constitute a significant number of jobs.

With regard to the document preparer position, the RFC did not specifically limit Claimant to performing simple and repetitive work. The ALJ limited Claimant to jobs that did not require "high production or rapid assembly," but he noted Claimant could "have goals or objectives," but not "the stress of high-volume work being required." (Tr. 34, 89). This RFC does not necessarily preclude any type of detailed work. In any event, even if the document preparer position is precluded based upon its reasoning level, the positions of addresser and touch up screener remain, which Claimant does not challenge based upon the reasoning level of the positions. However, Claimant contends that the addresser and touch up screener jobs do not exist in significant numbers.

"[T]he issue of numerical significance entails many fact-specific considerations requiring individualized language as

6

applied to a particular claimant's factual situation." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004), quoting *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). "[T]he number of jobs that contributes to the 'significant number of jobs' standard looks to the national economy-not just a local area." *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (citation omitted).

The VE testified, and the ALJ listed in his decision, that there are 18,000 sedentary addresser jobs and 20,000 sedentary touch up screener jobs in the national economy. (Tr. 41, 88-89). The Court finds that 18,000 addresser jobs and 20,000 touch up screener jobs available in the national economy is significant. *See Rogers v. Astrue*, 312 Fed. Appx. 138, 141 (10th Cir. 2009) (testimony by vocational expert of 11,000 hand packager jobs in the national economy could be relied upon by the ALJ as substantial evidence to support a finding of non-disability); *see also Fox v. Colvin*, 2015 WL 5178414, at *4 (W.D. Okla. Sept. 3, 2015) ("The *Rogers* [*v. Astrue*] decision came out the same year as *Raymond*, and that court implicitly found, as a matter of law, without engaging in a multi-factor analysis, that 11,000 jobs in the national economy is significant. The Court is persuaded by *Rogers* and finds that 32,000 utility tractor jobs in the national economy is significant.").

**Evaluation of Opinion Evidence**

Claimant contends the ALJ improperly considered the opinions from his treating physician Nick Carroll, D.O. The ALJ summarized the treatment records from Dr. Carroll in the decision. He referenced treatment notes from Dr. Carroll dating back to at least April of 2015. In January of 2016, it was noted Claimant's blood pressure and blood sugar were not well controlled and that Claimant needed changes in his medication. Dr. Carroll noted Claimant continued to smoke (Tr. 36, 333-38). The ALJ also discussed treatment records and notes for Claimant from Dr. Carroll from May of 2016 through July of 2017. In May of 2016, Dr. Carroll noted 3+ edema in the bilateral legs, minus 10 degrees extension of the left elbow, left shoulder impaired internal rotation at 60 degrees, and mild impairments in the cervical and lumbar spine. Claimant had severe loss of fine touch, temperature, and vibratory sensation and moderate loss of protective sensation. Dr. Carroll indicated Claimant was blind in one eye and exhibited severe neuropathy. He diagnosed Claimant with hypertension, diabetes mellitus, peripheral edema, severe peripheral neuropathy, and multi-joint dysfunction. He stated that in his opinion, Claimant was disabled. (Tr. 38-39, 656-58).

In August of 2016, Claimant's diabetes was still not well controlled, but he began using a new type of insulin in September of 2016. He continued to suffer from peripheral pitting edema in

8

January of 2017, and he was functionally blind in his left eye. By May of 2017, Claimant was out of insulin and had elevated blood pressure. He continued to suffer from pitting edema in June of 2017, and his blood pressure and blood sugar remained uncontrolled. Dr. Carroll encouraged Claimant to strictly comply with his insulin therapy. (Tr. 39, 639-51).

In July of 2017, Dr. Carroll wrote a letter for Claimant wherein he noted Claimant was blind in his left eye, had severe diabetic neuropathy, suffered from coronary artery disease with history of stent and myocardial infarction, and chronic kidney disease. He also stated Claimant had multiple mental health issues including extreme anxiety and PTSD. In Dr. Carroll's medical opinion, Claimant was "totally disabled with a poor prognosis for any meaningful rehabilitation." (Tr. 39, 711). Dr. Carroll also stated that he compared a consultative examination of Claimant with an abbreviated examination he performed on Claimant in May of 2016, and he determined there were "marked differences" between the examinations. He found the "level of deviation to be concerning." (Tr. 711).

"As long as the ALJ provides 'good reasons in his decision for the weight he gave to the . . . opinion[], [n]othing more [is] required[.]' . . . What matters is that the decision is 'sufficiently specific to make clear to any subsequent reviewer[] that weight the adjudicator gave to the . . . opinion and the

9

reasons for that weight.'" *Mounts v. Astrue*, 479 Fed. Appx. 860, 865 (10th Cir. 2012), quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *see also* 20 C.F.R. § 404.1527(c)(2).

As set forth herein, the ALJ included a detailed discussion of Dr. Carroll's treatment records and letters in his decision. He recognized Dr. Carroll as Claimant's treating physician, but he noted it was Dr. Carroll's opinion that Claimant was "disabled and could not work." The ALJ determined this opinion was on an issue reserved to the Commissioner and he therefore assigned it no weight. (Tr. 40).

The Court finds no error with regard to the ALJ's treatment of Dr. Carroll's opinions that Claimant was disabled and unable to work. The opinions were not entitled to controlling weight or any special significance because they addressed issues reserved to the Commissioner. 20 C.F.R. § 416.926(d)(1) (stating that opinions that a claimant is "disabled" or "unable to work" are not medical opinions); *Balthrop v. Barnhart*, 116 Fed. Appx. 929, 932-33 (10th Cir. 2004) (finding an opinion couched as conclusive on an issue reserved to the Commissioner is not a medical opinion entitled to controlling weight analysis or any special significance); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *5 (indicating that an opinion on an issue reserved to the Commissioner is still evidence and cannot simply be disregarded). Moreover, Dr. Carroll never assessed Claimant with any specific functional limitations, thus

there were no functional limitations for the ALJ to weigh. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened."); *see also Eacret v. Barnhart*, 120 Fed. Appx. 264, 267 (10th Cir. 2005) ("[T]he ALJ was not required to treat the collection of treatment notes as a medical opinion that Ms. Eacret was unable to work.").

Although Claimant does not explicitly raise an argument concerning the Appeals Council denial of review based upon additional evidence Claimant submitted, he appears to implicitly. The additional records from Dr. Carroll were not before the ALJ at the hearing or received by him prior to his decision on November 1, 2017. They include additional treatment records and notes from October of 2017 and February of 2018. Claimant asserts that in notes from October of 2017, Dr. Carroll referenced that he "rated [Claimant] moderately severe for most things[,]" suggesting Dr. Carroll had completed a medical source statement. (Tr. 18-19). Claimant also references a treatment note from February of 2018, wherein Dr. Carroll states that he believes Claimant is disabled and does not "foresee any job environment where he could successfully be employed in any meaningful fashion." (Tr. 13-14).

"[T]he Appeals Council must consider additional evidence offered on administrative review—after which it becomes a part of

11

our record on judicial review—if it is (1) new, (2) material, and (3) related to the period on or before the date of the ALJ's decision." *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011), citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). "[T]he Appeals Council is required only to 'consider' the new evidence—and a conclusory statement that it has done so is sufficient." *Vallejo v. Berryhill*, 849 F.3d 951, 953 (10th Cir. 2017). It will grant review of the ALJ's decision only if the additional evidence is new, material, and time-relevant and there is a reasonable probability the evidence would change the outcome of the ALJ's decision. A claimant must show good cause for not informing the agency of the evidence or submitting the evidence to the ALJ pursuant to 20 C.F.R. § 416.1435. *See* 20 C.F.R. § 416.1470(a-b). The Court must consider whether the ALJ's decision is supported by substantial evidence in the record as a whole, including the additional evidence. *Vallejo*, 849 F.3d at 956 (holding that when evidence is submitted to the Appeals Council and it becomes part of the record, the district court must "conduct a substantial evidence review by assessing the entire agency record," including the new "never-before assessed opinion.").

In its notice of denial, the Appeals Council stated that it was in receipt of the evidence dated from July 14, 2017 through October 13, 2017. It determined the evidence did not show a reasonable probability that it would change the outcome of the

12

decision. Moreover, the Appeals Council recognized the records dated November 10, 2017 through February 9, 2018, noting that the ALJ decided the case through November 1, 2017. The Appeals Council determined the evidence did not relate to the period at issue, and it did not therefore affect the decision of whether Claimant was disabled beginning on or before November 1, 2017. (Tr. 2). It concluded Claimant had not provided a basis for changing the ALJ's decision. (Tr. 1).

The Court finds that the ALJ's decision remains supported by substantial evidence. The records from October of 2017 again address issues reserved to the Commissioner as to the determination of whether Claimant is disabled. With regard to the possible existence of a medical source statement from Dr. Carroll, Claimant concedes that any such statement was not included in the record before the ALJ nor was it submitted to the ALJ prior to his decision issued on November 1, 2017. Claimant clearly obtained additional records from Dr. Carroll and submitted them to the Appeals Council, yet there is no medical source statement included. The Court will not remand on this basis. Moreover, the additional records from February of 2018 are not from the relevant period, and even if they did relate to the relevant period, the ALJ's decision remains supported by substantial evidence.

**Evaluation of Complaints and Symptoms**

Claimant contends the ALJ failed to properly assess the consistency of his complaints and symptoms. Specifically, Claimant asserts the ALJ did not support his credibility and consistency determination with the specific evidence he compared as legally required.

Deference must be given to an ALJ's evaluation of Claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10. However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

As part of his evaluation of Claimant's pain and other symptoms, the ALJ noted the two-step process for the evaluation of

14

symptoms set forth in Social Security Ruling 16-3p and the requirements under 20 C.F.R. § 416.929. (Tr. 34-35). He determined Claimant's medically determinable impairments could reasonably cause his alleged symptoms, but he found that Claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence in the record. In making these determinations, he summarized the medical evidence, Claimant's testimony, and reports of symptoms in detail. He determined Claimant's complaints were inconsistent with the evidence, providing examples as he discussed the evidence. He noted that although Claimant has a long history of diabetes, it is under better control. He found the medical records do not support the degree of limitation alleged regarding Claimant's neuropathy. He referenced Claimant's heart attack and subsequent stent placement and that Claimant's heart condition appears stable. The ALJ noted Claimant's kidney disease, but no indication Claimant would need dialysis. (Tr. 36). The Court finds no error with the ALJ's assessment of Claimant's symptoms and complaints, as it is supported by the medical record.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security

15

Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 3rd day of April, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE